I'm going to keep an eye on my clock and try to reserve a couple of minutes for rebuttal. In Duenes-Alvarez, the Supreme Court made clear that an attack on a state statute's overbreadth can succeed by pointing to cases where a defendant was actually convicted for conduct that would be considered an offense. In that case, the court held that the respondent had not shown that California applies its very broad theory of aiding and abetting liability to the statute in question, and his challenge failed for that reason. Here, Mr. Rodriguez has shown that California routinely convicts defendants for attempted murder for conduct that simply could not result in a conviction under the majority rule. The California cases that Mr. Rodriguez has provided make the showing that Duenes-Alvarez requires. Specific examples... Counsel, let me just ask, does it matter if a majority of states do not apply the natural and probable consequences to attempted murder? Well, it does, Your Honor. I think the analysis that the court takes, and I'm relying on previous cases from this court, such as Garcia-Santana, which addressed the question of conspiracy, is that the court looks at the practice of the majority of jurisdictions. It also looks to the model penal code and to the learned treatises that discuss the issue and then crafts what it finds to be the generic definition. Well, let me ask, how many states apply the natural and probable consequences doctrine to attempted murder in gang-related cases that is narrower than California's version? I'm sorry, I'm not sure if I understand the court's question. That's narrower?  I'm not sure if I know the answer to that specific question, Your Honor. What I've identified is about 20 cases that apply the natural and probable causes doctrine at least to specific intent crimes, where normally the rule is, if you're going to aid and abet a specific intent crime, you must share, at the minimum, you must share the requisite intent of the perpetrator, of the principal. The survey that I provided to the court I'm citing, I relied heavily on a comprehensive survey by Professor Decker that looked at all the practices of all the 50 states, identified about 20 states that have some form of the natural and probable causes doctrine for specific intent crimes. Counsel, how does that help you get around the Duane S. Alvarez test? Well, I think the showing that I've made makes the Duane S. Alvarez test. I think it satisfies it. So from your perspective, if you make a compilation of laws that you believe meet this test, admittedly some of the cases that you cite are not necessarily right there, but you're saying that in your view they meet the test. So you have less than a majority of the states that, by your definition, on Duane S. Alvarez meet the test here. But at least as I'm looking at it now, we've got cases since Duane S. Alvarez that California has applied that even talk about it and say that California continues to meet the Duane S. Alvarez test. What are we to do with that? Well, I think, Your Honor, the Duane S. Alvarez test properly is a focus on the statute of conviction. So the question with aiding and abetting liability is does California's theory of aiding and abetting liability, as applied to the statute, render the statute overbroad? Right. I understand that. So that hasn't come up for attempted murder. The cases that the government pointed to, it pointed to two cases. So you think, for example, in People v. Montes that they don't talk about, that it doesn't deal with the overbreadth issue you're talking about? Well, Montes is a case, I think Montes is a California case that I've provided as part of the many California cases that I cited that showed sort of the extremes to what people can be convicted of in California. And then People v. Medina, which is a 2009 case. That's correct, Your Honor. And attempted murder, natural and probable consequence of a spontaneous fist fight between two non-rival gangs, and they upheld it. So what... I think that's exactly my point, Your Honor, is that California convicts people of this kind of conduct. This conduct would not result in a conviction in the majority of the states under the monopoly code. You haven't shown that. Even if we accept as definitive your exhibit, and I'm not sure exactly how we treat that, it's not evidence. I mean, you've cited something, I suppose we ought to take judicial notice of your view of this, but there's not a majority of states. This is less than, what is it, 20 or something like that, maybe 23 that you cite, but it's not a majority. It's getting up there, but it's not a majority yet, right? Well, I think it's the other way around, Your Honor. There's 20 cases that apply the natural and probable causes doctrine, and 30, I'm sorry, 20 states, and 30 that do not. And what I'm arguing is that, that's my point, is that the majority rule is that the aider and abetter must specifically... Perhaps I miscounted. You're saying that there are now 30 states that do not specifically, in other words, eschewed the natural and probable consequences test. Yes. The exhibit that I provided was really less of an exhibit, more just a handy convenience for the court of some of the cases that I referred to below and here. It was more of an appendix just so the court could have for its convenience some of the states. What I'm relying on, Your Honor, is the survey, and I relied on this very heavily, especially in my opening brief, by Professor Decker, which goes through each state and its detailed practices regarding aiding and abetting for specific intent crimes. And the way that that survey broke it down, and essentially the survey did the work that I had been attempting to do when I was before the district court. I found it toward the end of that litigation. I'd been trying to compile my own survey of all the 50 states, and then I found one handily written for me, is that there are 30 states that do not have a natural and probable causes doctrine. So an aider and abetter must share the same intent as the perpetrator of the crime. When you don't apply the natural and probable causes. I'm sorry. Those states do not have a natural and probable causes. You're saying that, but they follow you, that the aider and abetter has to have the same scienter that the perpetrator of, say, the murder. Yes, at a minimum, must have the same mens rea. And this rule is also agreed upon by the Model Penal Code, by Lefebvre, and the other substantive criminal law statutes. And even as recently as the Supreme Court's recent opinion in Rosemond, which was an aiding and abetting case in a different context, in 924C, the court referred to that intent requirement as the general rule, and then said some states recognize an exception to that general rule, but the general rule is that the aider must share and specifically intend a specific crime. And the litany of things that people can be convicted for attempted murder for in California is large, and especially in the gang context, as Judge Nelson was referring to. I can aid and abet almost anything in the gang context, and I have a case that I didn't find until I was preparing for this argument, where the crime that was being aided and abetted was selling drugs in a rival gang member's territory. So the aider said, I'm going to help you sell some drugs in a rival gang member's territory, and then the perpetrator shot somebody and tried to kill them. And they found the aider, he intended to help them sell drugs, but then was liable for the attempted murder, even though he had no intention of helping anybody commit any crime or anything like that. And that case is People v. Slaffey. I can provide the site in a 20HA letter after argument, as I did not find it until I was preparing for this argument. And what was this again? Slaffey, S-L-A-F-F-E-Y, People v. Slaffey. And that's an example, that case right there, I think, makes the showing that's required under Duaneus Alvarez. Because a person there, he was convicted of a non-violent offense, or sorry, the target offense, the offense that he intended to aid was a non-violent offense. He said, I'm going to help you sell drugs in rival gang territory. And yet he was held liable for the subsequent attempted murder carried out by the perpetrator. Under the rule of the majority of the states, the model penal code, the treatises, and this court and its jurisprudence on Section 2 aiding and abetting, that would not have sufficed to convict him for an attempted murder for specific intent crime. I'm almost out of time. I'll reserve the balance. Thank you. Good afternoon. May it please the Court. Carl Barnes for the United States. On February 24, 2004, the appellant was a citizen of Mexico and pled guilty to attempted murder in Orange County, California, Superior Court. Attempted murder is an aggravated felony under the immigration law. Would you speak up, please? Attempted murder is an aggravated felony under the Immigration and Naturalization Act. And so he was deported by the Department of Homeland Security in May of 2007 as an aggravated felon. He's now challenging the validity of that prior removal based on the theory that California's aiding and abetting law, in particular the natural and probable consequences doctrine, is overbroad under the Taylor categorical test. Well, let me just ask you, since your time is limited, does the appellant win if he can demonstrate that the majority of states do not apply the natural and probable consequences doctrine to aiding and abetting for attempted murder? I think he needs to specifically, under Duenas-Alvarez, show that there is a realistic probability that California would apply its natural and probable consequences doctrine in the way that he contends. And so simply that a majority of states do not apply the natural and probable consequences doctrine, on his view, I don't think would suffice under Duenas-Alvarez. I think he needs to make that more specific showing. Well, then can you cite to any states that apply the natural and probable consequences doctrine to attempted murder in gang-related cases in the same way that California does? Your Honor, I believe the burden is on the appellant in this case to make that showing. The burden is on him to show that once he's been removed, that his removal was unfair under the third prong of 1326D. Now, so let me ask you this. This attempted murder occurred in, you said, 2004? Correct. Do we analyze the impact of Duenas-Alvarez as of 2004 when he was convicted? Or do we look at it today, many years later? Obviously the number of states that he shows in his Exhibit B would have been quite different in 2004. Don't we look at the law in terms of whether there was a conviction that would withstand scrutiny as the law existed at that point? Your Honor, that's possible. I'm not sure the specific answer to that question. But nevertheless, I believe that he hasn't shown. In fact, he cites this appendix. You were talking with him about this appendix of his. In his appendix, he says that he cites cases of state cases requiring aiders and embedders to share the same intent as the principal. And in fact, California does exactly that under the California Supreme Court case People v. Prettyman. The California Supreme Court specifically said that under aiding and embedding culpability in California, an aider and embedder who's going to be found culpable for a specific intent crime like attempted murder has to share the perpetrator's specific intent. Engage in murder? To the attempted murder. So in the case of attempted murder, which is a specific intent crime, if someone is an aider and embedder to that crime, then they would have had to share the perpetrator's specific intent. Automatically? Yes, that is the law under California. That is in People v. Prettyman, 926 P. 2nd, 1013 at page 1018. This has been the law in California for a long time. It continues to be the law in California. The natural and probable consequences doctrine is a variant or is a part of aiding and embedding law. But it's just not true that in California someone who's an aider and embedder is going to be convicted of a specific intent crime if he didn't have it, if he didn't share it with the perpetrator. So specific intent includes engaging in a gang fight? That shows specific intent to commit murder? Well, the specific intent will be the aiding and facilitating in the gang fight, and then it's a natural and foreseeable consequence of that, that people may die or get hurt. So I'm not sure you're really in disagreement over the issue. You can call anything specific intent once you say, well, it's specific intent if he sneezed. Here it's specific intent if that's a natural and probable consequence. And the question is, is that different from the rule? Well, and suppose every other state, 49 states say, well, the natural consequences are not enough to show specific intent. Wouldn't that meet the Duenas-Alvarez test? I suppose if there were 49 states, then that would be true, but... I'm not suggesting, I'm talking about how many states. I'm just saying that if the issue is not whether you label it specific intent, but the issue is what constitutes specific intent, and if 49 states said natural and probable consequences are not enough to show specific intent, then I would assume the one state that had natural and probable consequence would be broader for purposes of Duenas-Alvarez. That could be, Your Honor. Nevertheless, in Duenas-Alvarez, the Supreme Court noted that only 10 states had expressly rejected the natural and probable consequences doctrine. Okay, so then we're down back to the natural and probable consequences doctrine. And your dispute with your opponent, I gather, is over whether they've established that natural and probable consequences is not the rule in a sufficient number of states. Is that the issue? That is certainly part of the issue that the United States has with... And you disagree with his statistics? Yes. How many states do you think are the... I counted 23. I don't know how he got the number he did, but maybe I'm just looking at the wrong thing. How many states do you believe that were shown to no longer agree with the natural and probable consequences doctrine? You know, Your Honor, I don't have a specific number. I can't say that many of the cases that he cites in his appendix don't even apply to specific intent. That's part of what my problem was. I think he's got some cases in there that are quite outside the scope of anything we're talking about here. So you don't have any sense as to whether the numbers are one thing or another, right? I don't know. I just don't see it. And after Duenas-Alvarez, this court has subsequently considered California's natural and probable consequences doctrine twice. Once in Revelez-Espinosa and once in Bessaro-Lopez. And in both of those cases, this court, citing Duenas-Alvarez, rejected the appellant's claim that California's natural and probable consequences doctrine is overbroad under the Taylor categorical test. Duenas-Alvarez has not been disturbed by the Supreme Court. This court has recognized the authority on that point. And so if there are no further questions, the United States... Well, counsel, what worries me about this case is gang-related cases. Somebody's going to go out with his gang to sell drugs, talks to his younger brother who's 19, come with us, join the gang, and during the sale of the drugs, somebody kills somebody. Under your theory, it seems to me, that that kid who's joined the gang for that purpose will be guilty of murder. Well, Your Honor, the counsel for the appellant cited a drug case. In the briefs, I'm not familiar with that case. In the cases that he cited in his brief, they were all gang fights. And in the cases that he cited, what you see is the appellant engaging in a gang fight, either with his fists or with weapons. And then there's an attempted murder as part of the melee. And then he has culpability for it. And in those cases, I think you see that California's aiding and abetting theory is probably not that out of line with what other states would say. You have a gang member, he goes to a gang fight, he's trying to help his fellow gang members with numerical superiority in the fight. Someone gets hurt, that's a natural, foreseeable consequence of attempting to help someone with a gang fight. And even such treatises as Lefebvre recognize that this kind of culpability is widespread in the common law. Thank you. Thank you. Additional points, Your Honor. First, as to the first showing about the generic definition, Judge Smith, I understand your concern about the appendix. Most of those cases I put in there because I wanted to feature their language. A lot of them have very good language about why they reject the National Improbable Causes Doctrine. That's not an exhaustive list of the cases. You counted 23. I think that's right. What I've relied on is on page 26 of my opening brief, I relied on a state-by-state survey in the Law Review article that's extremely comprehensive that broke down every single state with multiple citations. It essentially did the work that I'd been trying to do in the original motion below. And I compliment you for having that scholarship, but again, I think you've just said that my count was right. We've got 23 states, so that's less than the majority, right? No, I'm sorry, Your Honor. I had 23 states in my appendix that I featured the language from. The article that I've identified has 30 states that do not apply the National Improbable Causes Doctrine, and there's 20 that do. There's six by statute and 14 by case law. How do we, you know, occasionally people will say, we want you to take judicial notice of something. Well, Law Review articles are not things we take judicial notice of. How are we getting this? What are we looking at there? Are you saying it's part of your brief? Is that what it is? I cited it as legal as the cases themselves are authority. They're collected in this Law Review article. Law Review articles, I'm not saying that it's... But you say we should do our own research about what they say and come to our own conclusion. No, Your Honor. I think I've summarized what the article says with citations to cases, and I think it's clear that they stand for what I've said that they do. You say that there are 30 states whose statutes are cited in this article which reject the natural and probable consequences doctrine? Yes. There are 20, to put it a slightly different way, there are 20 states that have a natural and probable consequences doctrine. Six by statute, 14 by case law. And what does that mean for the other 30? The other 30 do not. The other 30 either require that the aider specifically intend the actual crime at issue, so I specifically intend that you commit an attempted murder, or at least to share the mens rea, and that usually comes in recklessness crimes, where if I'm reckless and the perpetrator's reckless and we share that mens rea, then I can be liable for his actions. That's the first part of the showing. The second part is about whether California's outside of it, and I think the cases that I've provided really do go to that showing. The last question, Judge Smith, you asked the government counsel about what law we should look to, whether it's law now or law at the time. I think as to the federal question of what is the generic definition of the offense, I think the court answered that question recently in Aguilera-Rios, where it said that when the court is construing a statute or construing the law, the generic law, I guess it's the new federal common law, we go with the fiction that it's interpreting what it's always been. So, for example, if, and I know that's not what we have here, let's just say that we have one of the people that was convicted of insider trading by the U.S. attorney there before the Second Circuit recently reversed the underlying basis in law, and let's just say that was something that was prohibited in the immigration statute. Somebody had come from another country. You're saying that the fact that there is law, a change in the law, would overturn ipso facto any prior conviction. I'm not sure if it overturns the conviction, Your Honor. For purposes of analyzing whether or not they had committed a crime, an aggravated felony, or whatever it might be. I realize that insider trading is a bad example. I understand the court's question. I think the court has answered that, has distinguished between when the question is whether the person was deportable as charged in the charging instrument, whether they were eligible for relief from removal. If the question is eligibility for relief, then the question is really whether the immigration judge, under the law at the time, did his duty to inform. But when it's the question of whether someone's deportable as charged in the charging document, then the new construction of the statute controls, and that's from Aguilera-Rios. If the court has no further questions, I'll submit. Thank you very much. Thank you, Ken. The case is during to be submitted. The court will stand in recess for the day.
judges: Nelson, Reinhardt, Smith